UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TOP DOLLAR PAWN, GUN & CAR AUDIO #5 LLC | CIVIL ACTION NO. 12-0577 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CADDO PARISH, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a "Rule 12(b)(6) Motion to Dismiss" (Record Document 80) filed by defendant Willie L. Shaw, Jr. ("Chief Shaw"), who has been named as a defendant individually and in his official capacity as Chief of Police of the Shreveport Police Department. Chief Shaw seeks dismissal of plaintiff Top Dollar Pawn, Gun and Car Audio #5, LLC's ("Top Dollar Pawn") claims against him in his individual capacity. See id. Top Dollar Pawn opposed the motion. See Record Document 83. For the reasons which follow, Chief Shaw's motion is **GRANTED** and all of Top Dollar Pawn's claims against Chief Shaw in his individual capacity are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

Top Dollar Pawn filed the instant Section 1983 action "alleging an illegal seizure of property and a deprivation of its rights to due process under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution by the actions and policies of the named defendants." See Record Document 29 (Supplemental and Amended Complaint) at ¶ III(A)(1). In the Supplemental and Amended Complaint, Top Dollar Pawn identifies Chief Shaw as a defendant, stating:

> Defendant, Willie L. Shaw, Jr., individually, at all times relevant has been and continues to be the Chief of Police of the Shreveport Police Department. As an individual, Willie L. Shaw, Jr. has disregarded the clear and explicit

statutes of the State of Louisiana and the Constitutions of the State of Louisiana and the United States.

Id. at ¶ III(B)(8).[1] Top Dollar Pawn further alleges that Chief Shaw is liable in his individual capacity in the following ways:

    68.    Disregarding the applicable clear and explicit statutes of the state of Louisiana, Defendant Willie L. Shaw, Jr. is the Chief of the Shreveport Police Department and is directly responsible for the development, permitting the development of, and/or acquiescence in policies, procedures, practices and customs permitting and encouraging members of the Shreveport Police Department to seize private property unreasonably and without due process of law and making same the official policy of the [C]ity of Shreveport.

    69.    Disregarding the applicable clear and explicit statutes of the state of Louisiana, Defendant Willie L. Shaw, Jr. has developed, permitted the development of, and/or acquiesced in policies, procedures, practices and customs encouraging and condoning the improper seizure, retention and disposal of property by city personnel by the following acts and omissions:

        a.    Hiring officers who have no qualifications or inadequate qualifications in the matter of seizure and retention of property;

        b.    Failing to properly train persons hired by the Shreveport Police Department in proper techniques of seizing and retaining property so as to avoid the unconstitutional deprivation of property interests without due process of law[; and]

        c.    Failure to properly develop proper policies relating to the seizure, retention, and disposal of property that addresses the rights of those having an interest in said property.

    70.    By engaging in such acts and omissions, Defendant Willie L. Shaw, Jr. has thereby made the unreasonable and improper seizure of property without due process of law the official policy of the Shreveport Police Department.

---

[1]Top Dollar Pawn has also named Chief Shaw as a defendant in his official capacity. See Record Document 29 at ¶ III(B)(9). Chief Shaw has not moved to dismiss the official capacity claims.

71. In engaging in and following the policy of the [C]ity of Shreveport to permit or condone the improper seizure and disposal of private property by employees of its Police Department, Defendant Willie L. Shaw, Jr. violated the civil rights of the Plaintiff under the color of state law, giving rise to the damages set forth herein, while acting both in his individual and in his official capacity as Chief of Police, disregarding the applicable clear and explicit statutes of the state of Louisiana and the Constitutions of the State of Louisiana and the United States.

72. Further, not only should Defendant Willie L. Shaw have known that his actions were in violation of clear and explicit state statutes and the Constitutions of the State of Louisiana and the United States, but Defendant or representatives of his department were expressly informed by Plaintiff's counsel in a meeting prior to the filing of this litigation. Despite that knowledge, Defendants continue to violate the due process rights of the Plaintiff.

Id. at ¶¶ III(L)(68-72).

## LAW AND ANALYSIS

**I.   Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009).

"Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Association, 987 F.2d 278, 284-285 (5th Cir. 1993). Additionally, the general rule that "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678, 29 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not survive dismissal. See id.

**II. Analysis.**

Chief Shaw argues that he is entitled to qualified immunity because Top Dollar Pawn's allegations are not made with adequate specificity. See Record Document 80. More specifically, Chief Shaw contends that the allegations in the Supplemental and Amended Complaint "are not adequate to satisfy the heightened pleading burden applicable to a claim against a public official in his individual capacity." Record Document 80-1 at 5. Chief Shaw submits that Top Dollar Pawn has simply added the word "individual" to general allegations and "that such disguised official capacity allegations are not sufficient to escape a [Rule] 12(b)(6) dismissal." Id., citing Mann ex rel. Terrazas v. Lopez, 404 F.Supp.2d 932, 937 (W.D.Tex. 2005) and Batiste v. City of Beaumont, 421 F.Supp.2d 1000, 1007 (E.D.Tex. 2006). Chief Shaw asserts that the allegations in the Supplemental and Amended Complaint fail to sufficiently state "what in particular [he] did or failed to do,"

much less give the Court enough information to ascertain whether his actions were objectively unreasonable and clearly established as such on the day that such actions occurred. Id. at 6. More specifically, Chief Shaw seeks dismissal because Top Dollar Pawn has not alleged he was personally involved in any constitutional deprivation and/or that any alleged wrongful action on his part was causally connected to the alleged constitutional deprivation. See Record Documents 80 at 7-8 & 84 at 1; see also Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Conversely, Top Dollar Pawn maintains that its allegations in the Supplemental and Amended Complaint are sufficient to defeat Chief Shaw's motion. See Record Document 83 at 5. Top Dollar Pawn relies heavily upon the factual allegation that "Chief Shaw's representatives met with the Plaintiff and his attorneys on numerous occasions prior to litigation in an attempt by Plaintiff to stop the continuing deprivation of Plaintiff's constitutional rights by illegal seizures." Id. Despite these meetings, Top Dollar Pawn contends that the deprivations continued at the direction of Chief Shaw, thus constituting "personal action and/or inaction . . . [rising] to the level of involvement showing that Chief Shaw's action and/or inaction was objectively unreasonable under the circumstances." Id. In support of this argument, Top Dollar Pawn also points to "the similar case" of G & G Jewelry, Inc. v. City of Oakland, 989 F.2d 1093 (9th Cir. 1991).[2]

---

[2]In G&G Jewelry, Inc., the court stated:

> The police clearly are not authorized by California law to seize property from a pawnbroker for the purpose of returning it to the person who has reported it stolen. There is a genuine issue of material fact as to whether the police seized the property from the pawnbroker for that purpose, rather than as

Relying upon Wolfenbarger v. Williams, 826 F.2d 930 (10th Cir. 1987),[3] Top Dollar Pawn further contends that there are ample examples of Chief Shaw's authorization and/or condoning or acquiescing in the actual deprivation and violation of its rights. See Record Document 83 at 8. Top Dollar Pawn also argues that Chief Shaw's motion is premature because "discovery in this matter has only recently commenced" and it has "propounded discovery to Defendant in an effort to obtain any additional documentation regarding the official and/or unofficial policies of the Shreveport Police Department." Id. at 7, 8.

---

    evidence in a criminal investigation. More importantly, there is evidence that this is a standard practice of the Oakland Police Department, which may justify injunctive relief.

989 F.2d at 1102.

[3]In Wolfenbarger, the appellate court denied summary judgment on qualified immunity grounds as to the District Attorney, Assistant District Attorney, and the Police Chief, reasoning:

    Though [the Assistant District Attorney] rather than [the District Attorney] signed the memorandum . . . directing [the police officer] to release the stereo items, it is unclear from the pre-trial record whether [the District Attorney] authorized, condoned or acquiesced in the issuance of the memorandum. This is the same reasoning the district court relied upon in refusing to grant [the Police Chief's] motion for summary judgment based on the similar argument that he did not participate in the actual deprivation. We find it compelling in regard to [the Police Chief] and it is equally persuasive in regard to [the District Attorney].

    Further, it is unclear from the record whether [the District Attorney], by issuing his . . . memorandum directing police officers to seize stolen goods found in pawn shops, authorized, condoned or acquiesced in the violation of the plaintiff's constitutional rights to freedom from unwarranted search and seizure. We conclude that the district court acted correctly in refusing to grant summary judgment in favor of [the District Attorney].

826 F.2d at 937-938.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009). "The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity." Michalik v. Hermann, 422 F.3d 252 (5th Cir.2005). The qualified immunity analysis is a two-step inquiry:

> First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right. If the plaintiff fails this step, the defendant is entitled to qualified immunity. If [the plaintiff] is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances [and given the clearly established law at the time the challenged conduct occurred].

Newman Marchive Partnership v. Hightower, 735 F.Supp.2d 483, 501 (W.D.La. 2010). Judges may decide the order in which they address the two prongs of the qualified immunity test "in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. at 818.

Here, Top Dollar Pawn has alleged the illegal seizure of property without due process under the Fifth and Fourteenth Amendments. See Record Document 29 at III(A)(1), (F)(31-43). It has also alleged the unreasonable seizure of property in violation of the Fourth Amendment. See id. at III(A)(1), (G)(44-45). As to Chief Shaw, Top Dollar Pawn has alleged that he, in his individual capacity, disregarded clear and explicit statutes of the state of Louisiana, the Louisiana Constitution, and the United States Constitution, thus violating its civil rights. See Record Document 29 at ¶¶ III(L)(68, 69, 71). It has also alleged that Chief Shaw was "directly responsible for the development, permitting the

development of, and/or acquiescence in policies, procedures, practices and customs permitting and encouraging members of the Shreveport Police Department to seize private property unreasonably and without due process of law and making same the official policy of the [C]ity of Shreveport." Id. at ¶ III(L)(68). Top Dollar Pawn further avers that Chief Shaw "developed, permitted the development of, and/or acquiesced in policies, procedures, practices and customs encouraging and condoning the improper seizure, retention and disposal of property by city personnel" by hiring unqualified officers; failing to properly train officers; and failing to develop proper policies relating to seizure, retention, and disposal of property. Id. at ¶ III(L)(69). It contends that the aforementioned acts and omissions on the part of Chief Shaw "made the unreasonable and improper seizure of property without due process of law the official policy of the Shreveport Police Department." Id. at ¶ III(L)(70). Finally, Top Dollar Pawn contends that Chief Shaw "or representatives of his department were expressly informed by Plaintiff's counsel in a meeting prior to the filing of this litigation" that his actions were in violation of clear and explicit laws. Id. at III(L)(72).

Top Dollar Pawn has not alleged that Chief Shaw personally participated in any of the illegal/unreasonable seizures, or that he personally directed or ordered his officers to make such seizures. Additionally, other than the conclusory allegations that Chief Shaw was "directly responsible for the development . . . of . . . policies, procedures, practices" and "acquiesc[ed] in policies, procedures, practices and customs," there is no indication that Chief Shaw was personally responsible for any of the alleged illegal/unreasonable seizures. See id. at ¶¶ III(L)(68, 69). Top Dollar Pawn asserts no facts showing that any action or inaction on the part of Chief Shaw was affirmatively linked in any way to the alleged misconduct of his officers.

Top Dollar Pawn has alleged that a pawn detective for the Shreveport Police Department threatened its employees. See id. at ¶ III(E)(22). It further alleged that a meeting with "representatives" of the Shreveport Police Department to discuss the custom that developed contrary to the Louisiana Law of Pawn occurred on March 11, 2011 and that a meeting with the Shreveport Police Department's pawn detective to resolve recurring deprivations occurred on January 13, 2012. Id. at ¶¶ III(E)(25, 28). None of these specific factual allegations aver personal involvement, or lead to an inference of personal involvement, on the part of Chief Shaw. Top Dollar Pawn makes a general reference to Chief Shaw's alleged personal involvement in relation to a meeting that occurred prior to this litigation. However, Chief Shaw's involvement in this meeting is a mere potential, as the allegation in paragraph 72 of the Supplemental and Amended Complaint reads: "[Chief Shaw] *or representatives of his department* were expressly informed by Plaintiff's counsel in a meeting prior to the filing of this litigation" that "his actions were in violation of clear and explicit state statutes and the Constitutions of the State of Louisiana and the United States." Id. at ¶ III(L)(72) (emphasis added).

The Court finds that Top Dollar Pawn has failed to state a proper constitutional claim against Chief Shaw in his individual capacity. It has likewise failed to meet its burden of proving that Chief Shaw is not entitled to qualified immunity. "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than constitutional assertions: the plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir.2002) (citations omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d

381, 382 (5th Cir.1983). As set forth above, Top Dollar Pawn's factual allegations against Chief Shaw do not meet this heightened standard. Excepting the reference to a meeting prior to the filing of this litigation, the factual allegations against Chief Shaw in his individual capacity and the factual allegations against Chief Shaw in his official capacity are verbatim. See Record Document 29 at ¶¶ III(L)(67-72), (M)(73-77). The Court finds that the reference to such meeting, which does not even definitively allege that Chief Shaw attended the meeting, simply does not provide the additional facts needed to meet the requirements of a claim against an official in his individual capacity. See id., ¶ (L)(72) ("[Chief Shaw] *or* representatives of his department") (emphasis added). Moreover, Top Dollar Pawn's allegation of mere presence at a meeting, even if accepted as true, is insufficient to survive Rule 12(b)(6) dismissal, as it is not a factual allegation of specific conduct giving rise to a constitutional violation. Top Dollar Pawn's has not plead enough factual content as to its claims against Chief Shaw in his individual capacity for this Court to draw the reasonable inference that Chief Shaw is liable for the constitutional deprivations plead.

The Court further finds Top Dollar Pawn's reliance in its opposition upon G & G Jewelry, Inc. and Wolfenbarger to be unpersuasive. Neither case is binding upon this Court nor has Top Dollar Pawn provided ample support for its contention that such cases are "similar" to the instant matter.

Therefore, the Court concludes that Chief Shaw is entitled to qualified immunity as to the claims asserted against him in his individual capacity because Top Dollar Pawn has not plead its factual allegations with sufficient specificity to overcome the defense of qualified immunity; rather, its claims are disguised official capacity claims that are not

sufficient to escape Rule 12(b)(6) dismissal.

## CONCLUSION

Chief Shaw's Rule 12(b)(6) Motion to Dismiss is hereby **GRANTED**. The factual allegations in the Supplemental and Amended Complaint do not satisfy the heightened pleading burden applicable to a claim against a public official in his individual capacity. Thus, Chief Shaw is entitled to qualified immunity and all of Top Dollar Pawn's claims against him in his individual capacity are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of October, 2013.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE